**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| TINA IBEL and SHERYL TOMOR, individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiffs,<br>v.<br><br>NORFOLK SOUTHERN CORPORATION and NORFOLK SOUTHERN RAILWAY COMPANY,<br><br>　　　　Defendants. | **Civil Action No.:**<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

　　　　Plaintiffs Tina Ibel and Sheryl Tomor ("Plaintiffs"), on behalf of themselves and all others similarly situated, file this class action complaint against Defendants Norfolk Southern Corporation and Norfolk Southern Railway Company (collectively, "Defendants"). On personal knowledge of their own circumstances and upon investigation and information and belief of their counsel, Plaintiffs allege the following:

### INTRODUCTION

　　　　1.　　On February 3, 2023, at approximately 9:00 p.m., Norfolk Southern Railway Freight Train 32N derailed in East Palestine, Ohio, near the Pennsylvania border.

　　　　2.　　Following this initial derailment, approximately 40 additional cars derailed and a fire started, damaging another 12 cars.

　　　　3.　　Train 32N was transporting chemicals and combustible materials, including hundreds of thousands of pounds of polyvinyl, polyethylene, butyl acrylates, ethylhexyl acrylate, ethylene glycol monobutyl ether, and vinyl chloride, a toxic flammable gas. Vinyl chloride and ethylhexl acrylate are known carcinogens.

1

4. In the derailment and fire, certain of these chemicals combusted and would burn for several days. Thick, billowing smoke emanated from the fire and spread across the town of East Palestine and surrounding area.

5. The vinyl chloride was being stored in DOT105 pressurized tanks. In the heat from the burning fire, safety valves on these pressurized tanks opened to relieve pressure and thereby vented vinyl chloride into the atmosphere.

6. As the blaze continued unabated, government officials feared that the DOT105 tanks may rupture, causing an explosion. Both Ohio and Pennsylvania government officials ordered an immediate evacuation of the vicinity within a mile of the derailment.

7. Defendants then punctured holes in the vinyl chloride containers, allowed the chemical to discharge into the environment, and set it on fire. This chemical fire spread from the site of the derailment across the surrounding community.

8. Approximately 1500 to 2000 East Palestine residents were told to evacuate following the derailment. Schools remained closed for at least a week afterward. On February 6, 2023, Ohio Governor Mike DeWine expanded the evacuation area to include anyone in a one-by-two mile area surrounding East Palestine. This included parts of western Pennsylvania.

9. As a result of the derailment of Defendants' Train, and the subsequent release of hundreds of thousands of pounds of toxic chemicals, Plaintiffs and members of the Class have been exposed to acute and chronic toxic constituents that pose a danger to human health.

10. As set forth herein, derailment of Defendants' train was the result of a failure to exercise due care and, following the derailment, to ineffectively and inadequately contain the fallout.

11. The Train derailment and resulting displacement of the East Palestine community has interfered with the use and enjoyment of Plaintiffs' and members of the Class's properties, caused harm to person and property, and led to significant emotional distress.

12. Accordingly, Plaintiffs bring this class action lawsuit seeking relief from Defendants' irresponsible and tortious conduct.

## PARTIES

13. Plaintiff Tina Ibel is a citizen of Ohio and resides in Columbiana County.

14. Plaintiff Sheryl Tomor is a citizen of Ohio and resides in Columbiana County.

15. Defendant Norfolk Southern Corporation is incorporated in Virginia with its principal place of business located at 1200 Peachtree Street, NE, Atlanta, Georgia.

16. Defendant Norfolk Southern Railway Company is a wholly owned subsidiary of Norfolk Southern Corporation. Defendant Norfolk Southern Railway Company is incorporated in Virginia with its principal place of business located at 1200 Peachtree Street, NE, Atlanta, Georgia.

## JURISDICTION AND VENUE

17. This Court has subject matter jurisdiction over this matter under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and cost. There are more than 100 class members, and Plaintiffs are citizens of a State different from that of Defendants.

18. This Court has jurisdiction over Defendants because they regularly conduct business in this District and, in fact, operated a railway enterprise in this District.

19. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events and omissions giving rise to this action occurred in this District, and Defendants' actions and business enterprise caused harm to Plaintiffs in this District.

**FACTUAL BACKGROUND**

20. Defendants operate a railway enterprise in numerous states throughout the United States, including Ohio and Pennsylvania.

21. On February 3, 2023, a train of 150 cars operated by Defendants was traveling northeast from Madison, Illinois to Conway, Pennsylvania.

22. Twenty miles before it reached East Palestine, Ohio, the train car was "sparking" and/or "burning." A "hotbox" detector in Salem, Ohio, should have detected this activity and alerted the crew, but it is not known if this occurred.

23. The train car continued toward East Palestine, Ohio. East Palestine is a village of approximately 4700 residents located 50 miles northwest of Pittsburgh, Pennsylvania.

24. At approximately 9 p.m., a mechanical defect alarm sounded on Freight Train 32N. At around this same time, an overheated wheel bearing failed. Freight Train 32N derailed, causing approximately 40 cars to derail. A fire also started, damaging 12 additional cars.

25. Train 32N was transporting chemicals and combustible materials, including hundreds of thousands of pounds of polyvinyl, polyethylene, butyl acrylates, ethylhexyl acrylate, ethylene glycol monobutyl ether, and vinyl chloride, a toxic flammable gas and known carcinogen. Ethyhexyl acrylate is also considered a carcinogen by the Environmental Protection Agency.

26. In the derailment and fire, certain of these chemicals combusted and burned for several days. Thick, billowing smoke emanated from the fire and spread across the town of East Palestine and surrounding area.

27. The vinyl chloride was being stored in DOT105 pressurized tanks. In the heat from the burning fire, safety valves on these pressurized tanks opened to relieve pressure and thereby vented vinyl chloride into the atmosphere and, ultimately, into the surrounding community.

28. As the blaze continued unabated, government officials feared that the DOT105 tanks may rupture, causing an explosion. Both Ohio and Pennsylvania government officials ordered an immediate evacuation of the vicinity within a mile of the derailment.

29. The Office of Ohio Governor Mike DeWine issued a news release that warned:

> The vinyl chloride contents of five rail cars are currently unstable and could potentially explode, causing deadly disbursement of shrapnel and toxic fumes. To alleviate the risk of uncontrollable shrapnel from an explosion, Norfolk Southern Railroad is planning a controlled release of the vinyl chloride at approximately 3:30 p.m. today.
>
> According to Norfolk Southern Railroad, the controlled release process involves the burning of the rail cars' chemicals, which will release fumes into the air that can be deadly if inhaled. Based on current weather patterns and the expected flow of the smoke and fumes, anyone who remains in the red affected area is facing grave danger of death. Anyone who remains in the yellow impacted area is at a high risk of severe injury, including skin burns and serious lung damage.[1]

30. Defendants then punctured holes in the vinyl chloride containers, allowed the chemical to discharge into the environment, and set it on fire. This chemical fire burned and its constituents traveled across the East Palestine community, impacting people and properties within the smoke and vapor plume.

31. Vinyl chloride is an artificial volatile organic compound. It readily converts to a gas and travels through the air. It also travels through soil and groundwater.

32. Vinyl chloride is a carcinogen and is extremely toxic to humans. For this reason, it was stored in DOT105 containers, which are required for chemicals as toxic as vinyl chloride. There is no safe level of vinyl chloride exposure for humans. Even minor exposures can cause DNA mutations that may later develop into cancer or other serious human disease.

---

[1] https://governor.ohio.gov/media/news-and-media/east-palestine-update-evacuation-area-extended-controlled-release-of-rail-car-contents-planned-for-3-30-pm-02062023 (last visited Feb.17, 2023).

33. Approximately 1500 to 2000 East Palestine residents were told to evacuate following the derailment. Schools remained closed for at least a week afterward. On February 6, 2023, Ohio Governor Mike DeWine and Pennsylvania Governor Josh Shapiro expanded the evacuation area to include anyone in a one-by-two mile area surrounding East Palestine. This included parts of western Pennsylvania.

34. During the multi-day fire, three train cars containing diethylene glycol, which is a brake fluid, broke open and discharged into the soil and potentially the groundwater.

35. On February 10, 2023, the Environmental Protection Agency (EPA) stated that Defendants' train derailment and subsequent fire released and continues to release vinyl chloride, butyl acrylate, ethylhexyl acrylate, and ethylene glycol monobutyl ethers to the air, surface soil, and surface waters.

36. On social media and news reports, some residents reported that fish and frogs were dying in local streams. Other residents shared images of dead animals or reported chemical smells continuing for days after the derailment occurred.

37. Residents have also complained of headaches or experiencing a sick, nauseous feeling for days after the derailment.

38. On February 14, 2023, state officials acknowledged a plume of spilled chemicals had killed approximately 3500 fish and reached the Ohio River. Governor Mike DeWine stated that if he was living in the area, he would not drink tap water.

39. Defendants knew or should have known that initiating an enormous chemical burn of hundreds of thousands of pounds of volatile and toxic compounds would likely cause dangerous human exposures, contaminate properties, kill or injure fish and wildlife, and result in the forced

evacuation of homes and schools. Despite this understanding, Defendants set fire to their chemical cargo anyway.

## PLAINTIFFS' EXPERIENCES

40. Plaintiff Tina Ibel owns property and resides within .04 miles from the train derailment site in East Palestine, Ohio. She has lived at her residence on Clark Street since 2017. Ms. Ibel evacuated on February 5, 2023 to stay at a local hotel and returned to her residence on February 10, 2023. As a result of Defendants' negligent and reckless conduct, Ms. Ibel's home and property were blanketed in noxious smoke and chemical vapors emanating from the train derailment site. A chemical and/or burning smell remains present at her property, including within her home, even two weeks after the train derailment. A burnt train car still remains roughly 4-5 houses down from her residence. As a direct result of the train derailment and related chemicals releases, Ms. Ibel was exposed to these noxious chemicals. Due to being exposed to the noxious chemicals, Ms. Ibel has experienced certain symptoms, including but not limited to, headaches, burning nose, runny nose, sore throat, persistent coughing, itchy and irritated eyes, and itchy skin. Ms. Ibel did not experience these symptoms before the train derailment. In addition to these symptoms, she incurred expenses resulting from purchasing food and drinks while at the hotel, work clothes because she evacuated quickly on the night of February 5, 2023, shampoo, deodorant, toothpaste, toothbrush, other toiletries, and gas because her commute to work was longer as a result of being displaced from her residence. Ms. Ibel missed two days of work as a result of the train derailment. Ms. Ibel also had to purchase cleaning supplies upon returning home.

41. Plaintiff Sheryl Tomor owns property and resides approximately a mile from the train derailment site in East Palestine, Ohio. She has lived at this residence since 2006. She evacuated her home on the nights of February 5 and 6, 2023 due to the train derailment, returning

7

to her home midday the following Tuesday, February 7, 2023. As a result of Defendants' negligent and reckless conduct, Ms. Tomor's home and property was impacted by chemical vapors emanating from the train derailment fire causing Ms. Tomor to be exposed to these noxious chemicals. Due to being exposed to the noxious chemicals, Ms. Tomor has experienced certain symptoms, including but not limited to, a persistent cough, runny nose, sore throat, dry eyes causing eye irritation and redness, shortness of breath, dizziness, skin irritation, and periodic headaches. Ms. Tomor did not experience these symptoms before the train derailment.

## CLASS ALLEGATIONS

42. Plaintiffs bring this action as a class action on behalf of themselves and all others similarly situated pursuant to Rule 23(a), (b)(2), (b)(3), and (c)(4) of the Federal Rules of Civil Procedure.

43. Plaintiffs bring this action on behalf of the following classes:

> Medical Monitoring Class: All natural persons who resided within a 15-mile radius (the "Class Zone") of 1020 East Taggart Street, East Palestine, Ohio 44413, as of February 3, 2023;
>
> Property Damage Class: All natural persons who owned or rented a property within a 15-mile radius (the "Class Zone") of 1020 East Taggart Street, East Palestine, Ohio 44413, as of February 3, 2023.

44. Excluded from the Classes are Defendants and any of their affiliates, parents, or subsidiaries; the Judge(s) to whom this matter is assigned and their immediate family and staff; government entities; and any individual who makes a timely election to be excluded from the Class.

45. Excluded from the Medical Monitoring Class is any natural person who was not present in the Class Zone on or after February 3, 2023.

46. Plaintiffs reserve the right to amend the class definitions to conform to the evidence identified during discovery.

47. The proposed Classes meet the criteria for certification pursuant to Rule 23(a), (b)(2), (b)(3), and (c)(4).

48. **Numerosity (Rule 23(a)(1)):** Although the actual number of class members is presently unknown, there were approximately 4,500 residents of East Palestine, Ohio as of February 3, 2023. Many, if not all, of these individuals were exposed to harmful chemicals caused by Defendants' train derailment, or their properties or enjoyment thereof was impacted by Defendants' train derailment. Joinder of all of these potential class members into a single action is impractical.

49. **Commonality (Rule 23(a)(2)) and Predominance (Rule 23(b)(3)):** Consistent with Rule 23(a)(2)'s commonality requirement, and Rule 23(b)(3)'s predominance requirement, this action involves common questions of law and fact that predominate over any questions affecting individual class members. These common questions include;

   a. Whether Defendants' railway operations were conducted negligently, recklessly, or in an otherwise tortious manner;

   b. Whether Defendants owed a duty of care to Plaintiffs and members of the Classes;

   c. Whether the duty of care owed to members of the Classes obligated Defendants to refrain from conduct resulting in exposing Plaintiffs and the Classes to harmful chemicals;

   d. Whether Defendants breached their duty of care by causing the train derailment described herein and subsequent chemical burn;

9

    e. Whether Defendants' breach caused Plaintiffs and members of the Classes to experience harmful chemical exposures to their person or property;

    f. Whether medical monitoring is available to provide early detection benefits to members of the Medical Monitoring Class;

    g. Whether members of the Property Damage Class are entitled to damages for the interference with the use and enjoyment of their properties.

50. **Typicality (Rule 23(a)(3)):** Plaintiffs' claims are typical of those of the members of the Classes. Plaintiffs reside and/or own or rent property in the Class Zone and were present when the Class Zone was blanketed with toxic chemicals following Defendants' train derailment. Thus, Plaintiffs will pursue the same claims and legal theories seeking the same damages as the members of the Class.

51. **Adequacy (Rule 23(a)(4)):** Plaintiffs are adequate representatives of the proposed Classes because they are members of one or both Classes and are committed to pursuing this matter against Defendants to obtain relief for the Classes. Plaintiffs have no conflicts of interest with the Classes. Further, Plaintiffs' counsel are competent and experienced in litigating class actions, including environmental litigation and matters seeking medical monitoring relief.

52. **Superiority (Rule 23(b)(3)):** A class action is a superior means for the fair and efficient adjudication of this controversy. Because environmental claims of this nature are complex and expensive, most members of the Classes would likely find the cost of adjudicating their individual claims to be unduly prohibitive and will thus have no adequate remedy at law. Absent a class action, members of the Classes will have no reasonable way to remedy their harm, and may continue to incur damages, and Defendants' misconduct will continue unabated.

53. Class treatment of common questions of fact and law is superior to multiple individual actions or piecemeal litigation because it will conserve the resources of this and other courts and the litigants, and will promote consistency and efficiency of adjudication. There is no impediment to the management of this action as a class action because the questions of fact and law are virtually identical for Plaintiffs and members of the Classes.

54. **Injunctive and Declaratory Relief:** Class certification is also appropriate under Rule 23(b)(2) and (c). Defendants, through their uniform conduct, acted and refused to act on grounds applicable to the Classes as a whole, making injunctive and declaratory relief appropriate.

55. In addition, there are particular issues appropriate for certification under Rule 23(c)(4) and, in the alternative to certification under Rule 23(b)(3), certification of these particular issues would advance the disposition of this matter and the parties' interests.

### COUNT I: NEGLIGENCE
### (On behalf of the Classes)

56. Plaintiffs incorporate by reference each and every prior allegation of this Complaint as if fully set forth herein.

57. Defendants owed Plaintiffs and Class Members a duty to conduct their railway operations in a manner that would not cause Plaintiff and Class Members injury or harm.

58. Defendants also owed Plaintiffs and Class Members a duty to transport hazardous and toxic chemicals using reasonable care and in a manner that minimized the possibility those chemicals would be released to the environment.

59. Defendants breached their duty of care by operating Train 32N in a negligent manner, causing it to derail, and by releasing toxic chemicals, including vinyl chloride, to the environment and the community surrounding East Palestine, Ohio.

60. Defendants further breached their duties by failing to contain and prevent chemicals released from Train 32N, including vinyl chloride, from spreading to and contaminating the surrounding environment and exposing individuals within the Class Zone.

61. As a direct and proximate result of Defendants' tortious conduct, Plaintiffs and Class Members were exposed to toxic chemicals and significant levels. These exposures have created a significantly increased risk of disease or illness.

62. Further, as a direct and proximate result of Defendants' tortious conduct, Plaintiffs' property has been contaminated, as has the groundwater and drinking water supply in East Palestine, Ohio.

63. Plaintiffs and Class Members have suffered discomfort, inconvenience, loss of use and enjoyment of their properties, displacement from their homes, emotional distress, and diminution in property value.

64. Plaintiffs have been exposed to toxic chemicals released from Train 32N at levels far higher than background exposure levels. Some of these chemicals, including vinyl chloride, are known carcinogens.

65. As a result of the injuries caused by Defendants' tortious conduct, Plaintiffs are entitled to damages for lost property value, discomfort and inconvenience, personal injury, and toxic exposure.

66. Monitoring procedures exist and may be reasonably obtained that allow for early detection of diseases and illnesses associated with Plaintiffs' exposure. These monitoring procedures are different than those typically obtained and recommended in the absence of toxic exposures and are reasonably necessary due to Plaintiffs' and Class Members' exposures to toxic chemicals released from Defendants' train derailment.

67. Accordingly, and in addition to the damages set forth above, Plaintiffs are entitled to the quantifiable costs of a medical monitoring program.

68. For the reasons set forth herein, Defendants were grossly negligent, acted with reckless indifference to the health and well-being of Plaintiffs and the Classes, and/or intentionally failed to take the precautions necessary to prevent foreseeable railway accidents and, in the event of such accident, to prevent massive chemical releases of the sort that occurred herein. Defendants' conduct warrants an award of punitive damages.

## COUNT TWO: PRIVATE NUISANCE
### (On behalf of the Classes)

69. Plaintiffs incorporate by reference each and every prior allegation of this Complaint as if fully set forth herein.

70. Defendants' train derailment and resulting chemical fire has contaminated property and drinking water resources, contaminated the ecosystem, and caused widespread fish deaths within the Class Zone.

71. Defendants' tortious acts, as described herein, have interfered with Plaintiffs' use and enjoyment of their properties, caused displacement, and caused Plaintiffs to suffer injuries, inconvenience, and emotional distress.

72. Plaintiffs have suffered injuries, as described herein, that are different from those experienced by the public generally, including the contamination of their property and drinking water and interference with use of their properties.

73. Defendants' train derailment and the resulting chemical fire has created a private nuisance to those owners and renters of property within the Class Zone. This private nuisance has proximately caused the injuries described herein.

74. Defendants' negligent, reckless, and/or intentional acts and omissions were unreasonable and constitute a continuous invasion of the property rights of Plaintiffs and the Class Members.

75. As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiffs and Class Members have incurred, and will continue to incur, costs and expenses related to the contamination of their properties and drinking water, as well as the damages set forth herein.

## COUNT THREE: TRESPASS
### (On behalf of the Property Damage Class)

76. Plaintiffs incorporate by reference each and every prior allegation of this Complaint as if fully set forth herein.

77. Defendants, through the tortious conduct alleged herein, caused toxic chemicals to contaminate Plaintiffs' and Class Members' properties.

78. Plaintiffs and Class Members did not consent to the chemical contamination of their properties, as alleged herein. Defendants knew or should have known that Plaintiffs and Class Members would not consent to this trespass.

79. As a direct and proximate result of Defendants' acts and omissions, as alleged herein, Plaintiffs' properties have been contaminated, causing significant damage, including actual, consequential, and nominal damages, for which Defendants are responsible.

## COUNT FOUR: STRICT LIABILITY FOR ULTRAHAZARDOUS ACTIVITY
### (On behalf of the Classes)

80. Plaintiffs incorporate by reference each and every prior allegation of this Complaint as if fully set forth herein.

81. In the alternative to the first claim for relief, Plaintiffs bring this claim for strict liability.

82. Defendants' transport of dangerous and toxic chemicals constituted an abnormally dangerous or ultrahazardous activity for which Defendants are liable.

83. Defendants' transport of dangerous and toxic chemicals, using the transport materials that were used, was inappropriate to the place where it was carried out, especially given the close proximity to residential communities like East Palestine, Ohio.

84. The transport of these dangerous and toxic chemicals cannot be made safe by exercise of due care. Furthermore, the burning of chemicals to avoid a massive explosion is inherently unsafe and abnormally dangerous. These actions posed an unreasonable risk to the health and safety of Plaintiffs and members of the Class.

85. As a result of Defendants' abnormally dangerous activities, Plaintiffs and Class Members have suffered and will continue to suffer harm to their properties and injury to their person, resulting in damages as set forth herein.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that the Court enter judgment in their favor and against Defendants as follows:

a. For an order certifying the Classes, as defined above, and appointing Plaintiffs and their counsel to represent the Classes;

b. For damages, including compensatory, punitive, and exemplary damages, in an amount determined to be just and reasonable;

c. For an award in an amount determined to be just and reasonable to fund a medical monitoring program;

d. For an award of attorneys' fees, costs, and litigation expenses, as permitted by law;

e. For prejudgment interest on all amounts awarded;

  f.  For injunctive and declaratory relief, as permitted by law; and

  g.  Such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiffs demand a trial on all issues so triable.

Dated: February 17, 2023      Respectfully submitted,

                */s/ Terence R. Coates*
                Terence R. Coates (0085579)
                Justin C. Walker (0080001)
                **MARKOVITS, STOCK & DEMARCO, LLC**
                119 E. Court Street, Suite 530
                Cincinnati, OH 45202
                Tel: 513.651-3700
                tcoates@msdlegal.com
                jwalker@msdlegal.com

                James J. Bilsborrow*
                Robin L. Greenwald*
                **Weitz & Luxenberg, PC**
                700 Broadway
                New York, New York 10003
                (212) 558-5500
                jbilsborrow@weitzlux.com
                rgreenwald@weitzlux.com

                Gary M. Klinger*
                **MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, LLC**
                221 West Monroe Street, Suite 2100
                Chicago, IL 60606
                (866) 252-0878
                gklinger@milberg.com

                Nick Suciu III*
                **MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, LLC**
                6905 Telegraph Rd., Suite 115
                Bloomfield Hills, MI 48301
                Tel: (313) 303-3472
                Fax: (865) 522-0049
                nsuciu@milberg.com
                *\*pro hac vice forthcoming*
                **Counsel for Plaintiffs and the Putative Class**